IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTWAN WILLIAMS, | ) | CASE NO. 1:05 CV 2829 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| ERNIE MOORE, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.  Introduction

Before the Magistrate Judge by referral[1] is the pro se petition of Antwan Williams for a writ of habeas corpus.[2] Williams, convicted in a jury trial of aggravated murder,[3] is now serving a prison term of 20 years to life in the Lebanon (Ohio) Correctional Institution.[4]

He here asserts six grounds for relief.[5]  He claims that the trial court failed to instruct on a lesser included offense and improperly permitted use of incriminating statements he made to police;[6] that he received ineffective assistance of counsel at trial and on appeal;[7] that

---

[1] ECF # 4.

[2] ECF # 1.

[3] *Id.* at 1.

[4] *Id.*

[5] *Id.* at 5-6A.

[6] *Id.* at 5.

[7] *Id.* at 6-6A.

he was prejudiced by prosecutorial misconduct;[8] and that he was denied due process when convicted on insufficient evidence.[9]

In response, the state maintains that three grounds put forward by Williams are procedurally defaulted for not having been presented to state courts.[10]  It further argues that the remaining grounds are without merit and were properly denied by the state appeals court.[11] Williams has responded with a traverse contesting the positions advanced by the state.[12]

As explained below, the Magistrate Judge recommends that this petition be dismissed in part and denied in part.

## II.  Facts

### A.    Charged offense and result at trial

The facts of the charged offense and the result at trial were found by the state appeals court to be as follows:

> Antwan Williams ("Williams") contacted police at approximately 2:00 a.m. on the morning of August 14, 2002 stating that he had seen a dead body.  Williams led police to the body of C.M. ("the victim"), whom Williams had met during the evening of August 13, 2002.  Upon examination, the victim was found to have sustained blunt force trauma to the head, resulting in

---

[8] *Id*. at 6A.

[9] *Id.* at 6.

[10] ECF # 8 at 14.

[11] *Id.* at 22-41.

[12] ECF # 11.

multiple fractures to her skull and facial bones and massive brain injuries.  The head trauma caused the victim's death.

Williams agreed to give the police a voluntary statement on August 14, 2002.  At first, Williams indicated that he met the victim at a gas station between approximately 4:40 p.m. and 5:00 p.m. on August 13, 2002, where they had a brief conversation and then proceeded behind the station to have sex.  Williams stated after their encounter, he and the victim went their separate ways.  He indicated that, several hours later, he came across the body of the same young woman in the wood in the area known as Kingsbury Run.  Williams stated that upon discovering her, he asked if she was all right and, upon receiving no response, turned her body over with his shirt.  He then went home and threw the shirt in a trash can before flagging down police.  Williams was noticed to have blood on his shoes and shorts and was not wearing a shirt at the time.  Several items were recovered at the crime scene on the night of the murder, including a cement block with blood on it.  When investigators returned to the murder scene during daylight hours, approximately one week later, a used condom containing seminal fluid was discovered.

Police attempted to corroborate Williams' story during their investigation, without success.  Jerry Robinson, a friend of Williams, stated that he and Williams had picked up the victim from a local gas station, then he dropped Williams and the victim at Williams' residence at approximately 11:30 p.m. on the night of August 13, 2002. Robinson also stated that Williams contacted him subsequent to the murder to ask Robinson to assist him in providing an alibi for that night. Myron Currie, Williams' father, with whom he resided, indicated that Williams was indeed out with Robinson on the night in question, and he had not returned home by 11:30 p.m.  Currie was awakened at approximately 2:00 a.m. by the police, who had discovered the bloody shirt in a garbage can outside the home; Currie could not remember it being there before that night.  Currie also stated that Williams had contacted him by voicemail and asked him to tell police that he had not left with Robinson that evening.

Several days later, police detectives interviewed Williams once again.  After police indicated that they had spoken with several other individuals, Williams' story changed.  He began to cry and admitted that he had fabricated much of his previous statement.  He admitted that he had actually had sex with the victim in the Kingsbury woods near his home and that she had then requested money for bus fare.  When he refused to give her any money, the victim became angry and stated that she was going to call the police and her boyfriend to report that "[the appellant] had done something to her." (Tr. 905).

Williams then admitted that he had been smoking illegal drugs earlier in the day, that he "blacked out" and that he killed the victim. When police requested another written statement from him, he refused and asked to speak to an attorney.

Hair, blood and saliva samples were subsequently taken from Williams. Upon forensic analysis, the blood found on his shoes, shorts and shirt, as well as the blood found on the cement block recovered at the scene, matched the DNA profile of the victim. The seminal fluid found in the condom at the murder scene matched the DNA of Williams.

Williams was charged with two counts of aggravated murder with felony specifications, in violation of R.C. 2903.01. He was also charged with one count of kidnapping (R.C. 2905.01) and one count of rape (R.C. 2907.02), both with repeat offender specifications stemming from a prior juvenile conviction for involuntary manslaughter. A hearing was held on January 6, 2003, to determine whether Williams was a mentally retarded individual not subject to the death penalty, pursuant to *Atkins v. Virginia* (2002), 536 U.S. 304, 122 S. Ct 2242, 153 L.Ed.2d 335 and *State v. Lott* (2002), 97 Ohio St.3d 303, 779 N.E.2d 1011. He was found to be mentally retarded and, thus, not subject to the death penalty. A jury trial commenced wherein Williams was found guilty of aggravated murder, without the felony murder specification. He was found not guilty on all remaining counts. The trial court sentenced him to 20 years to life in prison.[13]

## B.      Direct appeal

Williams, through a new attorney,[14] timely appealed his conviction, raising the

following five assignments of error:

---

[13] *State v. Williams*, 2003 WL 22805741, at **1-2 (Ohio App. 8 Dist. Nov. 26, 2003). This decision is also included in the state record in the Lexis format at ECF # 8, Attachment 1. References here are to the Westlaw format, a copy of which is attached for the convenience of the District Judge.

[14] Williams was represented at trial by David Grant and Kenneth Mullein. *See*, ECF # 10 (notice of manual filing), Ex. 21 (first volume, trial transcript) at cover page. He was represented in the court of appeals on direct appeal by Brian McGraw. ECF # 8, Ex. 5 (notice of appeal) at 1.

-4-

1.      The court erred when it failed to instruct the jury on the lesser included offense of voluntary manslaughter.

2.      The court erred in denying appellant's motion to suppress statements due to appellant's retardation and due to the coercive offer regarding the death penalty.

3.      The court erred in allowing gruesome and duplicative photographs of the decedent and in allowing the jury to view a photograph that unfairly engendered sympathy for the victim.

4.      The court erred in allowing witness Robinson to "translate" a voicemail message from the defendant Williams.

5.      Appellant Charles Eskridge's (sic) conviction for robbery (sic) was based on insufficient evidence and against the manifest weight of the evidence.[15]

The state filed a brief opposing all assignments of error asserted by Williams.[16]  Upon review, the state appeals court found for the state on all grounds and affirmed the outcome at trial.[17]

---

[15] ECF # 8, Ex. 6 at i-ii (table of contents).  The Magistrate Judge notes that the ECF exhibit numbers referenced here are not identical to the stamped exhibit numbers on the state's exhibits to the Return of the Writ since the Electronic Case File sequence starts with what the state calls an "attachment" [the state appellate decision] and then proceeds to what the state calls "exhibits" – each category beginning with a document numbered "one."  Thus, the exhibit numbers referred to by the state in its briefs and on its documents are consistently one numeral behind the Electronic Case File exhibit numbers which include the "attachment" in the sequence.  This confusing and frustrating situation for the reviewing federal habeas court is why the initial Order of this Court requires a sequential Bates-stamping of all items to be submitted as part of the record.  The failure of the state to conform to this direction from the Court has needlessly complicated the review process, including the transmittal of a Report and Recommendation necessarily based on reference to this Court's Electronic Case Filing system.  Future submissions from the state that do not conform to this Court's initial Order are subject to being returned.

[16] ECF # 8, Ex. 7.

[17] *Williams*, 2003 WL 22805741.

Williams, acting pro se, then filed an untimely notice of direct appeal with the Ohio Supreme Court[18] together with a motion for leave to file a delayed appeal.[19]  The Court granted leave to file the delayed appeal[20] and Williams thereupon filed his jurisdictional memorandum presenting three propositions of law:

1.   Where the evidence in a capital case is such as to support a lesser included offense, the denial of a proper and timely request for a jury instruction for such a lesser included offense is an abuse of discretion and denies due process of law to the defendant.

2.   The elicitation of incriminating statements from a suspect who is mentally retarded, has been kept up through all hours of the night, and who has been coerced with offers to "take the death penalty off the table" is violative of the Fifth Amendment, and the denial of a motion to suppress such statements is erroneous, an abuse of discretion, and violative of the Fifth Amendment and Due Process.

3.   A conviction which is not supported by sufficient evidence of each essential element of a charged offense, and is contrary to the manifest weight of the evidence is violative of the Due Process of law.[21]

The state responded in opposition,[22] and the Ohio Supreme Court ultimately denied leave to appeal, dismissing the matter as not involving a substantial constitutional question.[23] Williams did not seek a writ of certiorari.

---

[18] ECF # 8, Ex. 9.

[19] ECF # 8, Ex. 10.

[20] ECF # 8, Ex. 11.

[21] ECF # 8, Ex. 12 at i.

[22] ECF # 8, Ex. 13.

[23] ECF # 8, Ex. 14.

**C.**     **Rule 26(B) application**

While this motion for leave to appeal was pending before the Ohio Supreme Court, Williams, acting pro se, filed a delayed application to reopen his appeal pursuant to Ohio Appellate Rule 26(B).[24]  In this motion, Williams asserted that his counsel on direct appeal was ineffective for not properly raising claims of ineffective assistance of trial counsel and prosecutorial misconduct. Specifically, Williams asserted:

1.     Appellant was denied the effective assistance of counsel at trial where counsel failed to adequately research, prepare and investigate for trial, in violation of the state and federal constitutions.

2.     Prosecutorial misconduct in the form of improper comments during closing arguments to the jury substantially and materially affected the entire trial with unfairness as to violate due process of law.[25]

The state filed a brief in opposition.[26]  The state appellate court then denied the delayed application to reopen, finding no good cause for the untimeliness and, alternatively, that Williams was barred by res judicata from raising these claims because he had not done

---

[24] ECF # 8, Ex. 15.

[25] *Id.* at 2, 5.

[26] ECF # 8, Ex. 16.

so at his first opportunity before the Ohio Supreme Court.[27]  Again alternatively, the court

also determined that the claims lacked merit.[28]

Williams, pro se, then sought to appeal the denial of his delayed application to

reopen.[29]  In his memorandum in support of jurisdiction to the Ohio Supreme Court, Williams

presented the following five propositions of law:

1.  Appellant was denied procedural due process of law when the court of appeals failed to find good cause for the late filing of his application for reopening of appeal.

2.  The court of appeals committed a plain and prejudicial error by ruling that the appellant's application for reopening of appeal raised issues that were barred by res judicata.

3.  The appellant was denied the effective assistance of appellate counsel when counsel failed to raise the ineffective assistance of trial counsel on direct appeal.

4.  The appellant was denied the effective assistance of trial counsel when counsel failed to adequately research, prepare and investigate for trial.

5.  Prosecutorial misconduct in the form of improper comments during closing arguments to the jury substantially and materially affected the verdict by so infecting the entire trial with unfairness as to violate due process of law.[30]

_____

[27] ECF # 8, Ex. 17.

[28] *Id.* at 4.  After specifically rejecting the application as untimely and without reason for that untimeliness (*see*, *id.* at 2-3), the court then, in the alternative, found the claims *also* barred by res judicata (*id.*, at 4, emphasis added).  ("Applicant's request for reopening is also barred by res judicata.")  The court finally, and again in the alternative, found the application lacked merit. *Id.* at 4. ("We *also* deny the application on the merits.") (Emphasis added).

[29] ECF # 8, Ex. 20.

[30] *Id.* at i.

-8-

Without a response by the state, the Ohio Supreme Court dismissed the appeal as not involving a substantial constitutional question.[31]

## D. Federal habeas petition

Williams filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting the following six grounds for relief:

1. Petitioner was deprived of due process of law where trial court refused to issue a requested and warranted instruction for a lesser included offense.

2. Petitioner's right to be free from compelled self-incrimination was violated.

3. Petitioner's right to due process of law was violated where there is insufficient evidence as a matter of law to support each essential element of the offense for which he was convicted beyond a reasonable doubt.

4. Petitioner was deprived of his Sixth Amendment rights where he was deprived of the effective assistance of counsel on appeal.

5. Petitioner was deprived of the effective assistance of counsel at trial where trial counsel failed to properly research, prepare and investigate for trial.

6. Petitioner was deprived of due process of law by the misconduct of the prosecutor which so infected the entire proceedings with unfairness as to violate due process.[32]

In response, the state maintains that while the first three asserted grounds for relief were presented to the Ohio courts on direct appeal, the fourth, fifth, and sixth grounds were first presented in the delayed application for reopening where the relief sought was found to

---

[31] ECF # 8, Ex. 21.

[32] ECF # 1.

-9-

be untimely and barred by res judicata.  Consequently, the state contends they must here be dismissed as procedurally defaulted.[33]

The state further contends that the first three bases for the writ were denied on their merits by the Ohio appeals court and that the denials were not unreasonable applications of clearly established federal law.[34]

Williams filed a traverse in which he contends, regarding his last three bases for relief, that the state cannot rely upon the dismissal of his Rule 26(B) application for untimeliness as a basis for procedural default because it has waived that argument and because Ohio has not adequately defined what may constitute a good cause for delay in a Rule 26(B) application.[35]  Thus, Williams contends, pursuant to the *Maupin* criteria, a federal habeas court may not conclude that an untimely 26(B) filing is a "firmly established and regularly followed" state ground for foreclosing habeas review.

Williams also disputes that res judicata is applicable, because, he claims, there is no requirement in Ohio law that the claims made in a Rule 26(B) application be first asserted on direct appeal.[36]  He further contends that the first three asserted grounds for relief were

---

[33] ECF # 8.

[34] *Id.*

[35] ECF # 11 at 1-2.

[36] *Id*. at 5-6.

decided against him by the Ohio court unreasonably applying clearly established federal law.[37]

## III.  Analysis

**A.    Procedural default**

*1.    Standard of review*

The Sixth Circuit has recently explained the analytical framework for considering procedural default as follows:

> A petitioner for a writ of habeas corpus must meet certain procedural requirements to permit review of his claims by a federal court.  The petitioner must first exhaust the remedies available in the state court by fairly presenting his federal claims to the state courts; unexhausted claims will not be reviewed by the federal court.  The exhaustion "requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  The federal court will not review claims that were not entertained by the state court either due to the petitioner's failure to raise those claims in the state court while state remedies were available *or* when the petitioner's failure to comply with a state procedural rule prevented the state courts from reaching the merits of the claims.
>
> For noncompliance with a state procedure to serve as a bar to habeas review, the state procedure must satisfy the standards set forth in *Maupin v. Smith*.  First, there must be a state procedure in place that the petitioner failed to follow.  Second, the state court must actually have denied consideration of the petitioner's claim on the ground of the state procedural default. Third, the state procedural rule must be an "adequate and independent state ground" to preclude habeas review.  This inquiry will "generally involve an examination of the legitimate state interests behind the procedural rule in light of the legitimate federal interest in considering federal claims."  A state procedural rule must be "'firmly established and regularly followed'" to constitute an adequate basis for foreclosing habeas review.  A state procedural rule is an

---

[37] *Id*. at 7-23.

independent ground when it does not rely on federal law.  If these three factors are satisfied, the petitioner can overcome the procedural default by either "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice."[38]

To establish "cause" for a procedural default, a habeas petitioner must show that "something *external* to the petitioner, something that cannot fairly be attributable to him[,]" precluded him from complying with the state procedural rule.[39]  Establishing "prejudice" requires that any alleged constitutional error be shown to have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[40]  A "fundamental miscarriage of justice" is understood to mean "actual innocence."[41]

Ineffective assistance of counsel may provide cause to excuse procedural default but only if that claim is itself first fairly presented to and exhausted in the state courts.[42]  However, a failure to exhaust state remedies on an ineffective assistance of counsel excuse for procedural default may also itself be excused from procedural default if a federal habeas petitioner can establish cause and prejudice concerning that claim.[43]  But a claim of

---

[38] *Smith v. Ohio Dep't of Rehab. and Corrs.*, 463 F.3d 426, 430-31 (6th Cir. 2006) (emphasis in original, internal citations omitted).

[39] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original).

[40] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[41] *Lancaster v. Adams*, 324 F.3d 423, 436 (6th Cir. 2003).

[42] *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

[43] *Id.*

ineffective assistance of counsel will not serve to excuse procedural default if the alleged
ineffectiveness occurred during a proceeding, such as state post-conviction proceedings, for
which there is no right to counsel.[44]

**2.    *Williams procedurally defaulted on grounds four, five, and six.***

Here, Williams first presented the claims now asserted as grounds four, five, and six
in his untimely application to reopen his appeal pursuant to Ohio Appellate Rule 26(B).  As
noted, the state court initially found that Williams's application was subject to dismissal as
untimely and that he had no excuse for such untimeliness.  Moreover, it then also found that
he had not raised the claims of ineffective assistance of counsel and prosecutorial misconduct
at his first opportunity to do so before the Ohio Supreme Court; thus, such claims were also
barred by res judicata. In addition, the Ohio appeals court alternatively denied the application
to reopen on its merits.

Initially, the Magistrate Judge observes that Williams is incorrect in asserting that the
state has "waived" any argument as to the untimeliness of his Rule 26(B) application.  In
fact, in describing why this Court may now predicate a procedural default on the decision of
the Ohio Supreme Court denying Williams's appeal from the denial of his delayed
Rule 26(B) application, the state specifically noted that "it is rebutably presumed that the
Ohio Supreme Court [in refusing to hear an appeal from the denial of the delayed Rule 26(B)

---

[44] *Coleman*, 501 U.S. at 752.

application] similarly enforced the *Eighth District's denial of 26(B) relief based on no good cause shown for the untimely filing* and on the basis of res judicata barring relief."[45]

Thus, while the state may have devoted more time in its return to the other, alternative grounds advanced on by the appellate court in denying the Rule 26(B) application, it has not waived nor abandoned the contention that Williams's procedural default here rests in the first instance on his failure to comply with the timely filing requirements for Rule 26(B) applications.

Next, Williams is also incorrect in his claim that the finding of unexcused untimeliness in the context of his Rule 26(B) application is inadequate to support a procedural default because Ohio courts "refuse to define what may constitute 'good cause for delay.'"[46] In fact, the Sixth Circuit has held that the timeliness requirement of Ohio Rule of Appellate Procedure 26(B), including the "good cause" exception, is an adequate and independent state law ground that is firmly established and regularly followed in non-capital cases in Ohio.[47]

---

[45] ECF # 8 at 15 (emphasis added).

[46] ECF # 11 at 2.

[47] *Monzo v. Edwards*, 281 F.3d 568, 577-78 (6th Cir. 2002).  *Accord*, *Smith*, 463 F.3d at 436, n.7; *Williams v. Bagley*, 166 F. App'x 176, 180 (6th Cir. 2006) ("Rule 26(B) is both 'firmly established and regularly followed.'"); *Knuckles v. Brigano*, 70 F. App'x 830, 841 (6th Cir. 2003) ("The timeliness requirement of Ohio R. App. P. 26(B) provides an adequate state law basis for the Court of Appeals' adjudication ..."). *See also*, *Parker v. Bagley*, 2006 WL 2589001, at *7 (N.D. Ohio Sept. 6, 2006) (discussing reasoning in *Monzo* and distinction between capital and non-capital cases). *And see*, *Franklin v. Anderson*, 434 F.3d 412, 420-21 (6th Cir. 2006) (Rule 26(B) has received "fluctuating treatment" in capital cases and so, in such cases, is not an adequate and independent state law basis that is firmly established and regularly followed.).

-14-

Thus, since: (1) Williams' Rule 26(B) application was untimely; (2) the state appeals court enforced the Rule 26(B) time limit and "good cause" exception in denying his delayed application; and (3) the Rule 26(B) time limit and "good cause" exception are "adequate and independent" state law grounds on which the state may rely to foreclose federal habeas review, the only remaining issue is whether Williams can offer a "cause" for his failure to make a timely filing and establish "prejudice" from this Court recognizing the procedural default.

He has done neither, choosing to rest his argument entirely on the mistaken contention that the state waived any reliance on the unexcused untimeliness of his Rule 26(B) application and an incorrect reading of federal law as to the adequacy of the applicable Ohio procedural rule.

Accordingly, the Magistrate Judge recommends finding that Williams has procedurally defaulted on grounds four, five, and six of his petition for habeas relief on the basis that the state appeals court dismissed his delayed application for reopening as untimely filed without good cause, and he has not shown cause for this default nor prejudice from failure to consider his claims.

Alternatively, the Magistrate Judge recommends finding that these grounds are also procedurally defaulted because they could have been presented to the Ohio Supreme Court on direct appeal but were not, thereby precluding review by the state appeals court on a reopened appeal on the basis of res judicata.

In response to the state's invocation of res judicata, Williams contends that Ohio law originally offered litigants with a claim of ineffective assistance of appellate counsel a choice to either bring that claim to the Ohio Supreme Court on direct appeal or do so in a motion for reconsideration.[48]  Then, after *State v. Murnahan*,[49] he claims that Rule 26(B) was created with the premise that the state appellate court retains – for the limited purpose of entertaining a timely filed Rule 26(B) application – concurrent jurisdiction over a case even when it has been directly appealed to the Ohio Supreme Court, and the requirement that further argues that Rule 26(B) claims be filed in the form of assignments of error – the format proper only to submissions to the court of appeals.[50]

Thus, according to Williams, there is no rule that he must "bypass" the Rule 26(B) process to present an ineffective assistance of counsel claim to the Ohio Supreme Court on direct appeal.[51]  He maintains that the state "mischaracterizes" Rule 26(B) as a "post-conviction" proceeding and "can point to no rule, no published decision, no act of the legislature that even so much as hints at the result arrived at by the state court in this case."[52]

In fact, it is Williams who is significantly in error as to the nature of Rule 26(B), its relationship to direct appeals, and the applicability of res judicata.

---

[48] ECF # 11 at 3-4.

[49] *State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E.2d 1204 (1992).

[50] ECF # 11 at 4.

[51] *Id*. at 5.

[52] *Id.*

First, as the Sixth Circuit recently re-stated in *White v. Mitchell*,[53] the doctrine of res judicata in Ohio has long been recognized as an independent and adequate state law ground to bar federal habeas review of an issue which an Ohio court declined to consider because it "'was raised or could have been raised by the defendant' at trial or on direct appeal."[54]  Thus, res judicata in Ohio applies to claims involving alleged ineffective assistance of appellate counsel in those cases where such claims can be presented to the Supreme Court of Ohio as part of the direct appeal process.

As opposed to other forms of post-conviction relief,[55] which are directed to the trial court,[56] Rule 26(B) is cast as a remedy available after the conclusion of direct appeals directed to the appellate court for those who claim that appellate counsel was ineffective but could not present that argument on direct appeal to the Supreme Court because the allegedly ineffective counsel was still representing the litigant.[57]

---

[53] *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005).

[54] *White*, 431 F.3d at 526-27, quoting *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104, 108 (1967).  *Accord*, *Monzo*, 281 F.3d at 576-77.

[55] A Rule 26(B) application has been explicitly held to be a post-conviction proceeding by the Ohio Supreme Court in *Morgan v. Eads*, 104 Ohio St. 3d. 142, 808 N.E.2d 1157 (2004).  This holding was made directly applicable to federal habeas courts in *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005) (en banc) overruling *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000).

[56] *See*, Ohio Rev. Code § 2953. 21.

[57] *See*, *Murnahan*, 63 Ohio St. 3d at 65-66, 584 N.E.2d at 1209.

As such, it presupposes that any claim of ineffective assistance that was not barred from presentation by the presence of the allegedly ineffective counsel on direct appeal will be presented at the first opportunity.

In this way, it is not inconsistent that a Rule 26(B) application may contain "one or more assignments of error that previously were not considered on the merits by any appellate court"[58] and yet be barred from consideration by the doctrine of res judicata if that claim could have been presented earlier because the allegedly ineffective counsel was no longer participating in the appeal.

Here, Williams's contention that he "properly presented, preserved and exhausted" his ineffective assistance of appellate counsel argument in "the manner and method required by the state court's published RULES,"[59] is simply incorrect. Accordingly, while the particular appellate court from which a case originated may retain jurisdiction over any subsequent post-conviction proceedings in that case, it does not follow, as Williams appears to suggest, that retaining such jurisdiction over post-conviction applications creates an option for the defendant.  If not represented by the same counsel in the Supreme Court who represented him in the court of appeals, the defendant may not simply elect to completely bypass the Supreme Court on direct appeal and present his claims against his former counsel in a Rule 26(B) motion.

---

[58] Ohio R. App. P. 26(B)(2)(c).

[59] ECF # 11 at 6 (emphasis in original).

Therefore, the Magistrate Judge recommends finding that, in addition to being filed late without a good cause, the claims contained in Williams's Rule 26(B) application were barred from consideration by the state appeals court by res judicata because they were not first presented to the Ohio Supreme Court on direct appeal.  The allegedly ineffective appellate attorney did not represent Williams in the Supreme Court.  No bar existed to asserting ineffective assistance of appellate counsel claims because of continuing representation.  The Magistrate Judge thus further recommends that grounds four, five, and six of the present petition for habeas relief be dismissed.

## B.     Merit review

### 1.     *Standard of review – contrary to/unreasonable application of clearly established federal law*

When a federal habeas petitioner has presented his federal claim to the state courts and those courts have adjudicated it, the federal court may not grant the writ unless the state decision was either "contrary to ... clearly established federal law, as determined by the Supreme Court of the United States" or "involved an unreasonable application" of such clearly established federal law.[60]

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrived at a conclusion that was opposite to that reached by the United States Supreme Court on a question of law or decides a case differently than does the United States Supreme Court on a set of materially indistinguishable facts.[61]

---

[60] *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (citing 28 U.S.C. § 2254(d)(1)).

[61] *Id.* at 405-06.

-19-

Where a state court has correctly identified the clearly established federal law as the basis for its decision, the writ may issue only if the federal habeas court determines that the state court unreasonably applied that law to the facts of the case.[62]  The proper inquiry is whether the state court's decision was "objectively unreasonable" and not merely erroneous or incorrect.[63]

## 2.    *Application of the standard*

### a.    *Ground one – failure to provide a requested jury instruction*

In order to receive the writ on the basis of incorrect jury instructions, a petitioner must demonstrate more than that the instructions were undesirable, erroneous, or universally condemned; taken as a whole, they must be so infirm as to render the entire trial fundamentally unfair.[64]  As the Sixth Circuit stated in *Baze v. Parker*,[65] "only if 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' can [the federal habeas] court grant the writ."[66]  The Supreme Court has emphasized that they "have defined the category of infractions that violate 'fundamental fairness' very narrowly."[67]

---

[62] *Id.* at 407-08.

[63] *Id.* at 409-11.

[64] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Hardaway v. Withrow*, 305 F.3d 558, 565 (6th Cir. 2002).

[65] *Baze v. Parker*, 371 F.3d 310 (6th Cir. 2004).

[66] *Id.* at 327 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

[67] *Dowling v. United States*, 493 U.S. 342, 352 (1990).

In non-capital cases where the alleged error is a failure to give an instruction on a lesser included offense, the Sixth Circuit in an *en banc* opinion has held that a federal habeas court may consider issuing the writ only if a "fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law."[68]

The *Bagby* holding concluded that, since it is not the function of federal habeas review to correct errors of state law, a federal habeas court would only be warranted in setting aside a conviction in a non-capital case for failure to give an instruction on a lesser included offense where that failure was "likely to have resulted in the conviction of an innocent person."[69]

It is critical to note that the rule is clear that "because *Beck*[70] was a challenge based on the Eighth Amendment, the Constitution does not require a lesser-included offense instruction in non-capital cases."[71] In a capital case, the *Beck* analysis must occur and, should a denial of a lesser included offense instruction be upheld, the state court's determination must be "objectively unreasonable" under the *Williams* criteria in order for the writ to issue.[72]

---

[68] *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990) (*en banc*).  *Accord*, *Campbell v. Coyle*, 260 F.3d 531 (6th Cir. 2001).

[69] *Id*. at 795.

[70] *Beck v. Alabama*, 447 U.S. 625 (1980).

[71] *Campbell*, 260 F.3d at 541.

[72] *See*, *id*. at 540.

Here, the state appeals court analyzed Williams's claim under a state standard analogous to the federal law of *Beck*,[73] which mandates giving the instruction on a lesser included offense when the facts permit a jury to reasonably find the defendant guilty on the lesser offense and not guilty on the greater offense.[74] The state court concluded that the trial judge was correct as a matter of state law in not giving the requested instruction on the lesser included offense of manslaughter because the evidence that the victim had a verbal confrontation with Williams, threatened to tell the police or her boyfriend about their encounter, and pushed him prior to her death would have been insufficient in Ohio law to "arouse the passions of an ordinary person beyond his control" and, so, establish a necessary element of voluntary manslaughter.[75]

Williams makes two arguments in response.  First, he asserts that the state court incorrectly interpreted Ohio law in that it did not consider the victim's push – a non-verbal act – in its determination that Ohio law holds that words alone are legally insufficient to arouse the passions of an ordinary person beyond his control.[76]  Next, he contends that he is "actually innocent of the offense of aggravated murder and guilty only of manslaughter."[77]

---

[73] *Beck*, 447 U.S. 625 (1980).

[74] *Id.* at 627.  *Accord*, *Bowling v. Parker*, 344 F.3d 487, 500 (6th Cir. 2003).

[75] *Williams*, 2003 WL 22805741, at *3.

[76] ECF # 11 at 9.

[77] *Id.* at 11.

The state cites Bagby, but misinterprets it to require a Due Process analysis by the state court along the lines of *Beck*, which, in a non-capital case, it directly does not.[78]  The state then maintains that, under Ohio law, the state appeals court was correct in its *Beck* analysis in affirming the denial of the requested instruction.[79]

First, it is critical to note again that this case was not a capital case since Williams was never liable to the death penalty as result of a pre-trial hearing that found him to be mentally retarded.  As previously stated, the foundation of *Beck* is that it is "*unconstitutional to impose the death penalty* when a 'jury [is] not permitted to consider a verdict of guilt of a lesser included, non-capital offense, and when the evidence would have supported such a verdict.'"[80] Thus, the Constitution does not impose the requirement that the decision in a non-capital case to deny a jury instruction on a lesser included offense be subject to a *Beck* analysis.

Nor, as previously noted, is there a federal Constitutional requirement, cognizable in a federal habeas proceeding, that the state court be correct as a matter of state law concerning the denial of such an instruction in a non-capital case.

Thus, as stated in *Bagby*, the sole inquiry of a federal habeas court in this situation is whether the denial of the requested instruction resulted in the conviction of an actually

---

[78] ECF # 8 at 23-24.

[79] *Id*. at 25.

[80] *Campbell*, 260 F.3d at 540, quoting *Beck*, 477 U.S. at 627. (Emphasis added).

innocent person.  Williams does not directly make such a claim of actual innocence, but does contend that he is innocent of aggravated murder while guilty of manslaughter.

The Supreme Court in construing "actual innocence" is clear that "actual innocence" means "factual innocence, not mere legal insufficiency."[81]  The Sixth Circuit, in *Harvey v. Jones*,[82] has directly held that a habeas petitioner in a non-capital case who admits to committing the underlying act but claims that he was improperly convicted of the specific offense as a result of erroneous jury instructions that failed to instruct on a lesser included offense merely states a claim of legal innocence, not factual or actual innocence, and so is not eligible for the writ.[83]

Accordingly, since Williams here admits causing the death of the victim but contends that, as a matter of state law, the jury in his case should have been able to convict him on a lesser included offense, he has not presented a cognizable federal habeas issue concerning the correct application of state law nor shown that he is actually innocent, not merely legally innocent, of the crime so as to enable a federal habeas court to issue the writ pursuant to the limited authority outlined in *Bagby*.

The Magistrate Judge, therefore, recommends that Williams's first ground for relief be denied since the decision of the state appellate court upholding the trial court's refusal to

---

[81] *Bousley v. United States*, 523 U.S. 614, 623 (1998).

[82] *Harvey v. Jones*, 179 F. App'x 294 (6th Cir. 2006).

[83] *Id*. at 298.

give the requested jury instruction was not contrary to the clearly established federal law as interpreted in *Bagby*, *Campbell*, and *Harvey*.

b.      *Ground two – motion to suppress statements made in police custody*

Williams contends that because he is mentally impaired, the trial court erred in not suppressing incriminating statements he gave to the Cleveland Police after they "coerced" him with threats that, unless he cooperated, he could face the death penalty.  He contends that as a mentally infirm person, he did not knowingly and voluntarily waive his *Miranda* rights.

The state, relying on the decision of the state appeals court, notes that mentally challenged persons are not per se incapable of knowingly waiving their rights, and that whether a waiver was knowing and voluntary is determined from an examination of the totality of the circumstances.  Here, the state maintains, Williams was logical and functional when he waived down a police car to report the incident; when he had the presence of mind to dispose of his bloody shirt; when he attempted to develop an alibi and coordinate the responses of others with that alibi; and, in the opinion of two police officers who interviewed Williams, he did not show any signs of a mental defect or inability to communicate.  In fact, the intellectual proficiency test scores admitted at trial show that Williams has reading and comprehension skills above the seventh grade level, which is the level recognized as the minimum for understanding *Miranda* rights.

*Miranda* rights may be waived if the waiver is voluntary, knowing, and intelligent.[84] Whether such a permissible waiver occurred is determined under the totality of the circumstances.[85]  In conducting this examination, a court should consider such factors as:

> (1) police coercion; (2) length of interrogation; (3) location of interrogation; (4) continuity of interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and (8) whether the suspect was advised of his *Miranda* rights.[86]

Of these factors, "[c]oercive police activity is a *necessary* element for finding that a confession was involuntary."[87]

Federal courts must, when considering a claim of improper coercion during interrogation, be aware that while direct "promises of leniency and threats of prosecution" can be coercive,[88] it is also true that "the success of a criminal investigation often hinges on obtaining information from uncooperative individuals."[89] Thus, "effective interrogation techniques often require, to some extent, a carrot-and-stick approach to eliciting information from an uncooperative subject."[90]

---

[84] *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Edwards v. Arizona*, 451 U.S. 477, 482 (1981).

[85] *Moran*, 475 U.S. at 421; *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004).

[86] *Abela,* 380 F.3d at 928 (citing *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993)).

[87] *Id.* (Emphasis added).

[88] *United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003).

[89] *Williams v. Withrow*, 944 F.2d 284, 289 (6th Cir. 1991), modified on other grounds, 507 U.S. 680 (1993).

[90] *Id.*

Where the focus is on an alleged threat to prosecute if the subject does not cooperate, the courts are clear that no coercion is present where the threat is in the nature of speculation about a possible outcome.[91]  Moreover, a statement concerning a possible consequence cannot be deemed coercive if "the threat could have been lawfully executed."[92]

It is uncontroverted that Williams was advised of his rights to remain silent and to have the assistance of counsel during questioning on several occasions.  It is also uncontested that Williams, after receiving a *Miranda* warning, initiated a conversation with police after the police told him that "if he was charged with murder he could be subject to the death penalty."

Williams asserts, however, that this comment about possible exposure to the death penalty was coercive and, thus, renders his subsequent statements involuntary and inadmissible.  He also contends that the totality of the circumstances show that the alleged waiver here was obtained from "a drunk, drugged, emotionally overwrought, physically ill mentally retarded suspect,"[93] and cannot be saved by recourse to the "testi'lying'" of the interrogating officers, whose evidence was "not credible or believable" in light of the other evidence adduced at the suppression hearing.[94]

---

[91] *See, United States v. Wiley*, 132 F. App'x 635, 640 (6th Cir. 2005) (citing *United States v. Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988)).

[92] *Johnson*, 351 F.3d at 263.

[93] ECF #11 at 13.

[94] *Id.* at 14.

The Magistrate Judge initially observes that the facts as found by the state appeals court are presumed correct by the federal habeas court unless shown to the contrary by "clear and convincing evidence."[95]  That presumption of correctness is entitled to special weight in determinations of credibility.[96]  Where, as here, the state court findings have support in the record, those findings must control, even if the federal habeas court were persuaded that other findings, also supported by the record, should be made.[97]

Moreover, a state court finding of mental competency is specifically subject to the presumption of correctness in a federal habeas proceeding.[98]

Here, the state court findings, supported by evidence of record at trial, are that Williams "was not obviously impaired when he flagged down the police, nor did he appear to suffer from any form of mental deficiency, neither at the crime scene nor at the time he gave his statements to the police. [Williams] may have a deficiency in intelligence and learning, but he was otherwise functional, communicative and able to care for himself."[99] Thus, the state appeals court found that, under the totality of the circumstances, "there is no

---

[95] 28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[96] *Patton v. Yount*, 467 U.S. 1025, 1038 (1984).

[97] 28 U.S.C. § 2254(d)(2); *Wainwright v. Goode*, 464 U.S. 78, 85 (1983).

[98] *Mackey v. Dutton*, 217 F.3d 399, 411-13 (6th Cir. 2000).

[99] *Williams*, 2003 WL 22805741, at *4.

indication that [Williams] was under any undue interrogatory stress" during his questioning by police.[100]

However much Williams would now like to convert his federal habeas petition into a de novo review of the credibility of the officers who testified at trial as to Williams's lack of impairment during questioning, that is not possible in this forum.  Nor has he presented any legal basis for overturning the finding by the state appeals court that, without more, the mere postulating of a hypothetical liability by police – *if* he was charged with murder, then he *could* be subject to the death penalty – was not coercion as a matter of law.  As noted, the mere speculation during interrogation as to possible outcomes is not coercive in the *Williams* line of cases, but permissible as part of the legitimate "carrot-and-stick" approach to obtaining information from an uncooperative or dissembling suspect.  And, as also noted, without a finding of police coercion, the claim that a confession was involuntary cannot survive.

Therefore, the Magistrate Judge recommends finding that the decision of the state appeals court that Williams's second ground of habeas relief was without merit was neither an unreasonable application of nor contrary to clearly established federal law.  Accordingly, it is further recommended that this ground here be denied.

**c.  *Ground three – that Williams was convicted with insufficient evidence***

Williams asserts that, as to the necessary element of "prior calculation and design," there was insufficient evidence adduced at trial to support his conviction for aggravated

---

[100] *Id.*

murder.[101]  The state counters that, as defined in Ohio law, the appeals court properly found that there was sufficient evidence of "prior calculation and design" to support the conviction.[102]

Federal law holds that, although questions of state law are not usually matters for federal habeas review,[103] the Constitution's Due Process Clause "forbids a state to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt."[104]

Sufficient evidence will be found to support a conviction if, after viewing the evidence and the inferences to be drawn from it in the light most favorable to the state, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[105]  This standard does not permit the federal court to make its own subjective judgment of guilt or innocence; rather, it gives full play to the responsibility of the trier of fact to resolve conflict in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts.[106]

Here, as related by the state appeals court, Ohio law provides that "prior calculation and design" requires establishing "the presence of sufficient time and opportunity for the

---

[101] ECF # 11 at 16.

[102] ECF # 8 at 40-41.

[103] *See*, *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[104] *Fiore v. White*, 531 U.S. 225, 228-29 (2001).

[105] *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *McKenzie v. Smith*, 362 F.3d 721, 727 (6th Cir. 2003).

[106] *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie*, 326 F.3d at 727.

planning of an act of homicide."[107]  Moreover, Ohio law as cited by the appellate court provides that three inquires be made to assist in determining whether prior calculation and design exist:  (1) Did the victim and accused know each other, and, if so, was the relationship strained?  (2) Did the accused give thought or preparation to choosing the murder weapon or murder site?  (3) Was the act drawn out or "almost an instantaneous eruption of events?"[108]

Here, the state appeals court found that Williams did not know the victim before the night of the crime but spent the evening riding around together in Jerry Robinson's truck. The crime was committed in an out-of-the-way spot and, rather than being an "instantaneous act," was the culmination of a process that took hours to accomplish, first in luring the victim to his home and then to the secluded scene where the crime was committed.[109]

On that basis, the court concluded that sufficient evidence had been presented to establish that Williams had sufficient time and opportunity to plan the murder of the victim.[110]

Williams disputes the finding of the state court, claiming that the evidence simply shows that he gave prior thought and calculation only to choosing a secluded spot for consensual sexual relations, not murder.[111]  He further contends that his act of stopping the

---

[107] *Williams*, 2003 WL 22805741, at *8.

[108] *Id.*

[109] *Id.*

[110] *Id.*, at *9.

[111] ECF # 11 at 16.

police and directing them to the body "contradicts" any finding that there was any prior calculation or design in the murder.[112]  He also urges this Court to look past the findings of the state appeals court to the evidence adduced at trial and contained in the transcript.[113]

Keeping in mind that a federal habeas court must view the evidence and draw all permissible inferences in favor of the state, it is undisputed that the record shows that Williams, over some extended period of time, formed a plan to take the victim to an out-of-the-way location where his activities would not be observed and where she was not easily able to call for help or receive assistance.

Moreover, under those conditions – which Williams was responsible for creating and which it is logical to infer he understood to afford him maximum freedom to act in secret – it is also reasonable to note that the evidence at trial established that the victim was killed with blows to the back of the head while she still partially undressed, facing the ground.[114] This is consistent with testimony that Williams told police the sex was "doggy-style" but inconsistent with Williams's statement to police that after they had concluded the sexual activity, the victim had prepared herself to leave and then, after demanding bus fare, had an altercation with Williams which resulted in her death.

Thus, there was evidence at trial from which a reasonable jury could conclude that the victim was killed not as a consequence of a post-coital argument while she was dressed and

---

[112] *Id.* at 17.

[113] *Id.*

[114] *See,* ECF # 10, Ex. 25 (trial transcript vol. 5, summary of evidence by the trial judge) at 943.

confronting Williams, but without provocation, while she was on her knees, partially undressed, facing the ground and completely unaware of an attack from behind with a massive cement block that required two hands to lift.

In that case, if Williams's story of an argument giving rise to the killing in a quick moment of rage was not believed by the jury because it was inconsistent with other known facts – a reading of the evidence favorable to the state which this Court is required to make – then the logical inferences would be that Williams planned to kill the victim as part of the same plan by which the victim was brought to the hidden, wooded area for sex; the murder was committed, as planned, at the moment while she was facing the ground in the ultimate defenseless position; and it was also done when he could use both his hands without her observation to lift the large cement block into position to use as the murder weapon.

As noted, these are precisely the reasons given by the trial judge for denying the defense motion at trial to dismiss the aggravated murder charge alleging insufficient evidence to support prior calculation and design. They further provide a more than adequate basis to here conclude that there was sufficient evidence before the jury to find prior calculation and design.

Accordingly, the Magistrate Judge recommends finding that Williams's third ground for habeas relief should be denied since the decision of the state appeals court on this ground was neither contrary to nor an unreasonable application of clearly established federal law.

## IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends that this petition be dismissed in part and denied in part as set forth herein.

Dated:  January 29, 2007                              s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[115]

---

[115] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).